JUDGE TUCKER
delivered the following opinion, on the first argument.
*This case has been very ably and elaborately argued by the counsel on both sides. A great deal has been said upon the evidence, and not a few remarks have been thrown out on the conduct of the parties. The testimony in my opinion may well be reconciled: all the witnesses appear to be persons of clear understandings and respectable characters: they all speak of conversations with the testator at different times, and in different places, and all those conversations (except the few words which one of the witnesses heard him say during his last illness, expressing a wish that he had a good will, or that he had somebody to write a good will for him) happened while he was in perfect health, and in the prime of life; although, as it turned out, he was within a few weeks of his grave. There is nothing in the testimony, or in the evidence, as X conceive, to impeach the conduct or character of any of the parties; a circumstance which I mention for the sake of those who may have been hurt by the sarcasms and insinuations which were more than once indulged in the argument of the cause; and which evidently have had the effect of wounding the feelings of respectable persons, without advancing (at least in my opinion) the cause of their clients respectively. I
The counsel have also favoured us with a discussion of the whole doctrine, concerning implied revocations, and republications of last wills and testaments, and I am happy to make them my acknowledgments for it. I have turned to the numerous cases and elementary treatises they have cited, and have endeavoured to draw from them all the information which may enable me, as well on future occasions as the present, to form a correct judgment on that important subject. Many of these cases turn upon particular points in the jurisprudence of England, which no longer exist in this country. It may therefore be doubted how far that particular class of cases, which are founded upon the strict words of the statute of wills in England, may be applicable to similar cases in this country, since our last statute of wills has been in force; by which a provision materially different from the English statute has been introduced.
Another numerous class of cases, arising *out of the different expressions used in the penning of the 5th and 6th section of the statute of frauds and perjuries, 29 Car. II, concerning the execution of wills of land, and the revocation of them, as noticed by Mr. Douglass, at the end of Right v. Price, Doug. 232, and by Mr. Powell, in his Treatise on Devises, vol. 2, p. 249, 2d Lond. edit, and by Mr. Roberts on Frauds, p. 460 to 465, I think are not likely to be considered as leading cases in this country; since the 4th section of our statute requires a revocation of a will of lands to be executed in the same manner as a devise thereof. And this Court have already in the case of Glascock v. Smithers and Hunt, 1 Call, 479, given to the 7th section, which relates to revocation of a will of chattels, such an exposition as will probably stand in no need of any comment, support, or contradiction from foreign authority. The only class of implied revocations, which can in any manner be applied to this case is, that where the revocation has been made Dy some declaration in writing, neither changing the estate of the testator in the lands, or other property, nor executed animo revocandi, as in the case of Beard v. Beard, 3 Atk. 72, in which Lord Hardwicke held a will of personal estate to be revoked by a void deed made to the testator’s wife.
So where a testator devised lands to his sister in fee, and afterwards by indenture let the same lands to her for sixty years, to commence after his death. This was held to be a revocation in toto, and not pro tanto only. Coke v. Bullock, 2 Cro. 49, cited Powell on Devises, vol. 2, 227. So an agreement for a partition of lands, hold as parceners, has been established against a conveyance and against a devise, ratifying and confirming that conveyance, although such agreement was executed in the presence of two witnesses only: the Lord Chancellor declaring the devise to be revoked by that agreement. 5 Ves. jun. 648, Knollys v. Alcock. The last case is perhaps referable to that class, in which, it has been held, that the least change or alteration, in the nature of the estate, though not in the testator’s interest or property *748 therein, has been construed to operate as a revocation.
*If Courts have been thus favourable to the doctrine of implied revocations, can any good reason be assigned, why they should set their faces against express revocations, made according to the very terms and directions of the statute? For, it is admitted that if the first will of Mr. Bates be revoked, it is by virtue of an express revocation in writing, wholly written by himself, and signed by himself, or not at all. 'What then are the facts, as to this naked point?
Charles F. Bates made his will in 1799, to which he added a codicil about two years after. In September, 1803, he made another will, differing very considerably from the first. To this will he subscribed his name. Afterwards, as is evident from the paper itself, upon the same paper, and somewhat below his name, he added these words, on one side of the paper, like the postscript to a letter: “I revoke all other wills heretofore made by me:” to which he again subscribed his name, which still remains uncancelled and unobliterated.
This second will, with the declaration in writing thereto added, is found after his death, in a small box, with other papers, and some money and coins, carefully put away and deposited in a large trunk, in his house. He had with great. apparent care cut out his name first subscribed to the will, thereby cancelling that to all intents and purposes. But for what reason, or from what motives, he left the declaration of an intention to revoke all former wills, standing unobliterated, and his name still remaining thereto, we are not told, nor is there one title of evidence, which relates to that particular fact. The declaration itself is as perfect at this moment, as it was the moment he had written and subscribed his name to it. No man can deny that at that time he intended this declaration to operate as a revocation of his first will. No man can say that it does not now appear in as palpable and intelligible a manner as it did then. There is no evidence of what passed in the testator’s mind when he cut out his name in one place, and left it standing in another, but the paper itself. That, and that only, must speak his intention. If it had happened, that in his last illness he *had directed this paper to be brought to him, had declared himself dissatisfied with its contents, generally, and had .desired any friend who was present to tear it to pieces, or throw it into the fire, and that friend, instead of doing so had said, “itwill be sufficient to cut out your name,” and had done so, in the testator’s presence; I admit that such parol evidence as this would have been proper to explain that which might need explanation; as where a testator should throw the ink, instead of the sand, upon his will, through mistake: but in the present case we have no testimony whatsoever that bears upon this particular fact. I therefore reject the whole of it on both sides, as having no relation whatsoever to that point, upon which the cause, in my opinion depends. I consider this declaration, then, wholly written, and separately signed by Mr. Bates, as an express statutory revocation of all former wills made by him, utterly independent of, and unconnected with, his second will; and by the maker left in full force, at the time of can-celling that second will, and remaining in full force at the time of his death.
But an objection was taken to the want of a date to it. Although the preceding paper is void, as a will, being cancelled, it furnishes a direct evidence as to the date of this instrument, that it was posterior, not only to the first will, but that the execution of it, at least, was posterior to the second will. It bears date September, 1803. Suppose this act of revocation had been written on the back of a letter bearing the same date, or having a postmark of the same date; would a Court shut their eyes against such evidence, though there were no date to the instrument itself? I conceive not. A Jury, upon an issue of devisavit vel non, would most certainly find the revocation as made at or after the date of the letter, or the postmark; and I think this Court may do the same, without sending the parties to a Jury.
Upon these grounds I am of opinion that the judgment of the District Court, admitting the first will to record, ought to be totally reversed.
* JUDGE ROANE
was of a different opinion, and gave his reasons at large, for affirming the judgment of the District Court.